# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TIMOTHY BERTRAM, | CASE NO. 1:10-cv-00583-AWI-GBC (PC) |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS RECOMMENDING GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DISMISSING ACTION, WITH PREJUDICE |
| v. | |
| C. SIZELOVE, et al., | |
| Defendants. | Doc. 73 |
| / | OBJECTIONS DUE WITHIN THIRTY DAYS |

**Findings and Recommendations**

**I. Procedural Background and *Woods v. Carey***

On April 5, 2010, Plaintiff Timothy Bertram ("Plaintiff"), a state prisoner proceeding pro se and in forma pauperis, filed this civil rights action pursuant to 42 U.S.C. § 1983 alleging claims arising at California Correctional Institution Tehachapi, California ("CCI Tehachapi"). Compl. at 2, Doc. 1.[1] On November 22, 2010, the Court dismissed certain claims and found a cognizable claim against Defendants C. Sizelove and J. Heinzler ("Defendants") for Eighth Amendment deliberate indifference to serious medical need. Doc. 13.

On December 10, 2010, the Court issued a second informational order, advising Plaintiff that Defendants may file a motion for summary judgment and how Plaintiff must oppose the motion in

---

[1] Plaintiff is now incarcerated at California Men's Colony, San Luis Obispo ("Men's Colony").

order to avoid dismissal, pursuant to *Rand v. Rowland*, 154 F.3d 952 (9th Cir. 1998). Doc. 18. On June 11, 2012, Defendants filed a motion for summary judgment. Doc. 73. On July 2, 2012, Plaintiff filed an opposition to the motion for summary judgment. Doc. 74. On July 20, 2012, Defendants filed a Reply to Plaintiff's opposition. Doc. 80.

On July 6, 2012, the Ninth Circuit found that the notice and warning of requirements for opposing a defendant's motion for summary judgment should be issued contemporaneously when a defendant files a motion for summary judgment, as opposed to a year or more in advance. *Woods v. Carey*, 684 F.3d 934, 936 (9th Cir. 2012). On July 23, 2012, the Court issued an amended second informational order to Plaintiff, in accordance with *Woods*, and provided Plaintiff with twenty-one (21) days to stand on his existing opposition or withdraw his opposition and file an amended opposition. Docs. 82, 83. On August 6, 2012, Plaintiff filed an amended opposition to the motion for summary judgment. Doc. 89. On August 9, 2012, Defendants filed an amended reply. Doc. 90. On September 10, 2012, Plaintiff filed exhibits that were omitted from his opposition. Doc. 96. Thus, the Court will consider Plaintiff's amended opposition and exhibits and Defendants' amended reply in deciding the motion for summary judgment.

## II. Legal Standard for Summary Judgment

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Under summary judgment practice, the moving party:

> [A]lways bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" *Id.* If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In attempting to establish the existence of this

factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Fed. R. Civ. P. 56(c); *Matsushita*, 475 U.S. at 586 n.11. In resolving the summary judgment motion, the Court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587.

**III. Allegations in Plaintiff's Complaint and Opposition for Eighth Amendment Deliberate Indifference against Defendants Sizelove and Heinzler and Relevant Facts Undisputed by Plaintiff**

At the time relevant to this case, Plaintiff was an inmate in the custody of the California Department of Corrections and Rehabilitation ("CDCR") at CCI Tehachapi. Compl. at 4, Doc. 1. At all times relevant to this case, Defendants were correctional officers assigned to CCI Tehachapi. *Id.*

On July 4, 2009, Plaintiff was placed in administrative segregation. *Id.* at 5. Plaintiff was given the opportunity to speak with a possible cellmate, inmate Inge. *Id.* Plaintiff told inmate Inge that he must have the bottom bunk because he has seizures. *Id.* Inmate Inge then turned and told Officer Large that Plaintiff could not be his cellmate. *Id.* Plaintiff was then placed in a holding cage and approached by Defendant Officer Sizelove. *Id.*; Pl. & Defs. UF No. 5, Mot. Summ. J. & Am. Opp'n, Docs. 73, 89. Plaintiff indicated to Defendant Sizelove that he had signed the compatibility chrono, and it was inmate Inge who was refusing the housing assignment. Pl. & Defs. UF No. 5, Mot. Summ. J. & Am. Opp'n, Docs. 73, 89. Defendant Sizelove also spoke with inmate Inge. *Id.* Plaintiff had no other contact with Defendant Sizelove regarding the allegations in this lawsuit. *Id.* Defendant Sizelove did not review Plaintiff's central file regarding housing compatibility on July 4, 2009. *Id.* Defendant Sizelove left and Plaintiff was re-housed in another cell. Compl. at 5, Doc. 1; Pl. & Defs. UF Nos. 5, 12, Mot. Summ. J. & Am. Opp'n, Docs. 73, 89. Plaintiff was then placed in a cell with second proposed cellmate, inmate Apadaca. Pl. & Defs. UF No. 9, Mot. Summ. J. &

Am. Opp'n, Docs. 73, 89. Plaintiff asked his cellmate, Apodaca, if he could have the bottom bunk. Pl. Am. Opp'n, Decl. at 33, Doc. 89. Apodaca refused and stated that he was assigned to the bottom bunk and that Plaintiff would be moved later. *Id.*

Defendant / Correctional Officer Heinzler had nothing to do with Plaintiff and inmate Apadaca being housed together. *Id.* at Pl. & Defs. UF No. 13. It was 1-3 days later when Plaintiff first spoke with Heinzler in regards to his housing assignment. *Id.* On July 9, 2009, Defendant Officer Heinzler and the psychiatric technician came to give Plaintiff his seizure medication. Compl. at 6, Doc. 1. Plaintiff explained to Defendant Heinzler that he needed to be moved to a bottom bunk because he has seizures. *Id.* Defendant Heinzler asked Plaintiff if he had an accommodation chrono. *Id.* Plaintiff said he did but that it was in his property in R&R. *Id.* Defendant Heinzler then told Plaintiff to submit a healthcare request form and that he would personally look into the matter. *Id.*; Pl. & Defs. UF No. 14, Mot. Summ. J. & Am. Opp'n, Docs. 73, 89. Defendant Heinzler also asked the psychiatric technician to verify this through Plaintiff's medical file. *Id.*; Pl. & Defs. UF No. 15, Mot. Summ. J. & Am. Opp'n, Docs. 73, 89.

On July 12, 2009, Defendant Sizelove issued Plaintiff a rules and violation report ("RVR"), charging Plaintiff with refusing to house with inmate Inge. Pl. Am. Opp'n Ex. K at 63-64, Doc. 89. Defendant Sizelove wrote that Plaintiff became uncooperative with staff efforts to place him in administrative segregation. *Id.* Defendant Sizelove reported that Plaintiff stated, "I'm not the one with the [expletive] problem, it's him (inmate Inge)." *Id.* Inmate Inge stated he did not have a problem with Plaintiff. *Id.* A central file review was completed and it was determined that Plaintiff and Inge were compatible to be placed in a cell together. *Id.*

On July 14, 2009, Plaintiff alleges he had a seizure while he was sleeping, causing him to fall off the top bunk to the ground. Compl. at 7, Doc. 1. Plaintiff's head hurt like a migraine for a few hours, and had a big lump for a day. Pl. & Defs. UF No. 17, Mot. Summ. J. & Am. Opp'n, Docs. 73, 89. His right shoulder was red with a bruise and bothered him for 2-3 days. *Id.* He had no other injuries from the fall. *Id.* Plaintiff was transported to Tehachapi hospital and then returned to prison and housed in a bottom bunk. Compl. at 7, Doc. 1.

On July 19, 2009, Plaintiff filed a 602 grievance. *See* Pl. & Defs. UF No. 12, Mot. Summ.

J. & Am. Opp'n, Docs. 73, 89; *see also* Defs. Mot. Summ. J. Ex. D. Pl. Inmate Appeal, Doc. 73. In Plaintiff's inmate grievance, Plaintiff states he told inmate Inge that "he must have the bottom bunk." Defs. Mot. Summ. J. Ex. D. Pl. Inmate Appeal, Doc. 73. Inmate Inge then told Correctional Officer Large that Plaintiff could not be his celly. *Id.* Plaintiff was then placed in a cage and approached by Defendant Sizelove. *Id.* Defendant Sizelove told Plaintiff he would make sure Plaintiff had nothing but problems until the day he paroled. *Id.* Plaintiff felt threatened by Defendant Sizelove, and Plaintiff told Defendant Sizelove that he was not the one with the problem, that inmate Inge was the one with the problem. *Id.* "Sizelove then left . . . I was then housed in cell 12 w/o incident." *Id.* (ellipsis in original). Plaintiff wrote that "he thinks" that when Sizelove issued the RVR and reviewed Plaintiff's central file that Sizelove would have seen his history of seizures. *Id.*

### IV. Legal Standard and Analysis for Plaintiff's Claim

### A. Eighth Amendment Deliberate Indifference to Serious Medical Need and Linkage

#### 1. Legal Standard

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). The two part test for deliberate indifference requires the plaintiff to show (1) "'a serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent." *Jett*, 439 F.3d at 1096 (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *overruled on other grounds*, *WMX Techs., Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc)).

Deliberate indifference is shown by "a purposeful act or failure to respond to a prisoner's pain or possible medical need, and harm caused by the indifference." *Jett*, 439 F.3d at 1096 (citing *McGuckin*, 974 F.2d at 1060). Deliberate indifference may be manifested "when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." *Id.* Where a prisoner is alleging a delay in receiving medical treatment, the delay must have led to further harm in order for the prisoner to make a claim of

deliberate indifference to serious medical needs. *McGuckin*, 974 F.2d at 1060 (citing *Shapely v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985)).

Under § 1983, Plaintiff must link the named defendants to the participation in the violation at issue. *Iqbal*, 556 U.S. at 678-79; *Simmons v. Navajo County, Ariz.*, 609 F.3d 1011, 1020-21 (9th Cir. 2010); *Ewing*, 588 F.3d at 1235; *Jones*, 297 F.3d at 934. Liability may not be imposed on supervisory personnel under the theory of respondeat superior, *Iqbal*, 556 U.S. at 676; *Ewing*, 588 F.3d at 1235, and administrators may only be held liable if they "participated in or directed the violations, or knew of the violations and failed to act to prevent them," *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); *accord Starr*, 652 F.3d at 1205-08; *Corales*, 567 F.3d at 570; *Preschooler II v. Clark County School Board of Trustees*, 479 F.3d 1175, 1182 (9th Cir. 2007); *Harris v. Roderick*, 126 F.3d 1189, 1204 (9th Cir. 1997).

Plaintiff may not seek to impose liability on defendants merely upon position of authority, based on vague or other conclusory allegations. Plaintiff fails to allege sufficient facts to support a plausible claim based on the knowing disregard of a substantial risk of harm to Plaintiff's health. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner, and *Estelle*, 429 U.S. at 106; *McGuckin*, 974 F.2d at 1059, and isolated occurrences of neglect do not rise to the level of an Eighth Amendment violation, *O'Loughlin v. Doe*, 920 F.2d 614, 617 (9th Cir. 1990); *Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990).

Neither an inadvertent failure to provide adequate medical care, nor mere negligence or medical malpractice, nor a mere delay in medical care, nor a difference of opinion over proper treatment, constitutes an Eighth Amendment violation. *See Estelle*, 429 U.S. at 105-06; *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989); *Shapley v. Nev. Bd. of State Prison Comm'r*, 766 F.2d 404, 407 (9th Cir. 1984). Moreover, the Constitution does not require that prison doctors give inmates every medical treatment they desire. *Bowring v. Godwin*, 551 F.2d 44, 47-48 (4th Cir. 1977). To establish a constitutional right to treatment under the Eighth Amendment, an inmate must show that a physician or other health care provider exercising ordinary skill and care at the time of observation would conclude with reasonable medical certainty that: (1) the prisoner's symptoms evidenced a serious disease or injury; (2) the disease or injury was curable or could be substantially alleviated;

and (3) the potential for harm to the prisoner by reason of delay or denial of care would be substantial. *Id.* "The courts will not intervene upon allegations of mere negligence, mistake or difference of opinion." *Id.* at 48; *see also Sanchez*, 891 F.2d at 242. In addition, gross negligence is insufficient to establish deliberate indifference. *See Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990). Plaintiff is not permitted to dictate his medical treatment. *Bowring v. Godwin*, 551 F.2d 44, 47-48 (4th Cir. 1977). As a matter of law, differences of opinion between prisoner and prison doctors fails to show deliberate indifference to serious medical needs. *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996).

Neither negligence nor gross negligence is actionable under § 1983 in the prison context. *See Farmer v. Brennan*, 511 U.S. 825, 835-36 & n.4 (1994); *Wood*, 900 F.2d at 1334 (gross negligence insufficient to state claim for denial of medical needs to prisoner). Nor is negligence actionable under § 1983 outside of the prison context. The Constitution does not guarantee due care on the part of state officials; liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process. *See County of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998). The Eighth Amendment's prohibition of cruel and unusual punishment applies to prison medical care (and the Fourteenth Amendment's right to due process applies to jail medical care); however, an Eighth Amendment or Fourteenth Amendment violation only occurs if there is deliberate indifference to a known risk to an inmate's serious medical condition.

**2. Analysis**

Plaintiff has not established a genuine issue of material fact for trial as to his claim against Defendants for Eighth Amendment deliberate indifference.

As for Defendant Sizelove, Plaintiff cannot point to any facts to show that Defendant Sizelove had any knowledge of his medical condition or acted with deliberate indifference. In Plaintiff's complaint and amended opposition to the motion for summary judgment, Plaintiff makes the conclusory allegation that Defendant Sizelove was deliberately indifferent to Plaintiff's medical need. Compl. at 5, Doc. 1; Pl. & Defs. UF Nos. 5, 12, Mot. Summ. J. & Am. Opp'n, Docs. 73, 89. Plaintiff does not allege Defendant Sizelove was actually aware of his medical need. *Id.* In Plaintiff's amended opposition, Plaintiff states that he told Defendant Sizelove he refused to be housed on the

bottom bunk. Am. Opp'n at 32-33, Doc. 89. In addition, for the first time in this lawsuit, Plaintiff alleges that he told Defendant Sizelove that he had a chrono for a top bunk. *Id.* The Court notes that Plaintiff did not make this allegation in his initial 602 grievance, his complaint, or in his deposition. *See* Compl., Doc. 1; *see also* Defs. Mot. Summ. J. Ex. A. Pl. Dep. at 18-19, Ex. D. Pl. Inmate Appeal, Doc. 73. However, notwithstanding the inconsistency in the record, Plaintiff's new allegations still do not state that he told Defendant Sizelove about his medical condition. *Id.*

Plaintiff alleges Defendant Sizelove had reviewed Plaintiff's central file based on Defendant Sizelove's statement in the RVR. Compl. at 7, Doc. 1; Pl. Am. Opp'n Ex. K at 63-64, Doc. 89. However, even though Defendant Sizelove may have reviewed Plaintiff's central file for the purposes of issuing an RVR for refusing a cellmate, there are no facts to show Defendant Sizelove had any knowledge of Plaintiff's medical condition or acted with deliberate indifference to Plaintiff's medical condition. *Id.* Moreover, Plaintiff admits in his complaint and amended opposition to the motion for summary judgment that he had no actual conversation with Defendant Sizelove regarding his medical condition. Compl. at 5, Doc. 1; Pl. & Defs. UF Nos. 5, 12, Mot. Summ. J. & Am. Opp'n, Docs. 73, 89. Plaintiff's conclusory allegations do not demonstrate that Defendant Sizelove was *actually aware* of his alleged medical condition. *Jett*, 439 F.3d at 1096. Since Plaintiff cannot point to any facts to show Defendant Sizelove was actually aware of Plaintiff's medical condition, Defendant Sizelove cannot act with deliberate indifference. *Id.*

As for Defendant Heinzler, Plaintiff cannot point to any facts to show that Defendant Heinzler acted with deliberate indifference to his medical condition. In Plaintiff's complaint and amended opposition to the motion for summary judgment, Plaintiff states that he told Defendant Heinzler about his medical condition and Defendant Heinzler asked Plaintiff to complete a healthcare request form and Defendant Heinzler would personally look into the matter. Compl. at 6, Doc. 1; Pl. & Defs. UF No. 14, Mot. Summ. J. & Am. Opp'n, Docs. 73, 89. On July 9, 2009, Plaintiff completed the healthcare request form, and on July 14, 2009, Plaintiff alleges he fell from his bunk. Compl. at 7, 15, Doc. 1. Thus, only five days had passed following Plaintiff's conversation with Defendant Heinzler. *Id.* Moreover, Plaintiff does not allege that he told Defendant Heinzler his request was urgent or immediate. *Id.* Therefore, Plaintiff cannot show that Defendant Heinzler was

deliberately indifferent when he told Plaintiff to file a healthcare request form and only five days had passed since their conversation. Plaintiff's allegations may, at the most, amount to negligence, which is insufficient to hold a defendant liable for <u>deliberate</u> indifference to a serious medical need, under the Eighth Amendment. *See Estelle*, 429 U.S. at 105-06 (emphasis added). Plaintiff fails to point to a dispute of fact for his assertion of deliberate indifference to a serious medical need because that high standard requires that the defendant actually *knew of and acted in conscious disregard* of a known serious risk. *Estelle*, 429 U.S. at 106; *McGuckin*, 974 F.2d at 1059.

Thus, even with liberal construction, Plaintiff's complaint and amended opposition to the motion for summary judgment does not show deliberate indifference to a medical need because neither mere negligence or medical malpractice, nor a mere delay in medical care, nor a difference of opinion over proper treatment, constitutes an Eighth Amendment violation. *See Estelle*, 429 U.S. at 105-06; *Sanchez*, 891 F.2d at 242; *Shapley*, 766 F.2d at 407.

Plaintiff has not established a genuine issue of material fact for trial as to his claim against Defendants for Eighth Amendment deliberate indifference.

**V. Conclusion and Recommendation**

Plaintiff has "failed to point to 'specific facts' in the record that could 'lead a rational trier of fact to find' in his favor. *Matsushita*, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e))." *Beard*, 548 U.S. at 535. Accordingly, pursuant to Rule 56 of the Federal Rules of Civil Procedure, it is HEREBY RECOMMENDED that the Court GRANT Defendants' motion for summary judgment and that this action be DISMISSED, with prejudice.

//
//
//
//
//
//
//
//

1  These Findings and Recommendations will be submitted to the United States District Judge
2  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **thirty (30) days**
3  after being served with these Findings and Recommendations, the parties may file written objections
4  with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and
5  Recommendations." The parties are advised that failure to file objections within the specified time
6  may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153, 1156-57
7  (9th Cir. 1991).

11  IT IS SO ORDERED.

13  Dated:    October 22, 2012                                    UNITED STATES MAGISTRATE JUDGE