# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TIMOTHY BERTRAM,<br><br>            Plaintiff,<br><br>      vs.<br><br>C. SIZELOVE, et al.,<br><br>            Defendants. | 1:10cv00583 AWI DLB PC<br><br>FINDINGS AND RECOMMENDATIONS REGARDING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT<br><br>(Document 73) |

Plaintiff Timothy Bertram ("Plaintiff"), a state prisoner proceeding pro se and in forma pauperis, filed this civil rights action pursuant to 42 U.S.C. § 1983 on April 5, 2010.  On November 22, 2010, the Court issued an order finding a cognizable Eighth Amendment claim against Defendants C. Sizelove and J. Heinzler.

On June 11, 2012, Defendants filed this Motion for Summary Judgment.[1]

Plaintiff filed an opposition on August 6, 2012.  Defendants filed their reply on August 9, 2012.

---

[1] In the Court's Amended Second Informational order issued on July 23, 2012, Plaintiff was provided with notice of the requirements for opposing a motion for summary judgment.  Klingele v. Eikenberry, 849 F.2d 409, 411-412 (9th Cir. 1988).

On September 10, 2012, Plaintiff filed a notice indicating that certain exhibits were not attached to his opposition due to a mistake in the prison mail room.[2]

A Court-imposed stay was recently lifted on the Motion for Summary Judgment and it now ready for decision.  Local Rule 230(l).

## I.   LEGAL STANDARD

Summary judgment is appropriate when it is demonstrated that there exists no genuine dispute as to any material fact, and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  Under summary judgment practice, the moving party

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'"  Id. at 324.  Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  Id. at 322.  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  Id.  In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied."  Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine dispute as to any material fact actually does exist.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

---

[2] The attached exhibits did not factor into the Court's analysis.

In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists.  Fed. R. Civ. P. 56(c); Matsushita, 475 U.S. at 586, n.11.  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Thrifty Oil Co. v. Bank of Am. Nat'l Trust & Sav. Ass'n, 322 F.3d 1039, 1046 (9th Cir. 2002); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"  Matsushita, 475 U.S. at 587 (quoting former Rule 56(e) advisory committee's note on 1963 amendments).

In resolving a motion for summary judgment, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any.  Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed, Anderson, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party, Matsushita, 475 U.S. at 587 (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) (per curiam)).

Finally, to demonstrate a genuine dispute, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . .Where the record taken as

3

a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 586-87 (citations omitted).

## II.     UNDISPUTED FACTS

Plaintiff was incarcerated at California Correctional Institution ("CCI") in Tehachapi, California, during the time of the relevant events.  Compl. 4.  Defendants Sizelove and Heinzler were correctional officers at CCI during all relevant times.  Compl. 4.

On July 4, 2009, Plaintiff was placed in Administrative Segregation after he received a Rules Violation Report for fighting with another inmate.  Pl.'s Dep. 12:15-13:20.  Upon arrival, Sergeant Timonen and Lieutenant Hetzel reviewed his Central File to find a compatible cellmate.  Pl.'s Dep. 15:19-16:5.  Plaintiff was given an opportunity to talk with a possible cellmate, Inmate Inge.  Plaintiff told Inmate Inge that he needed the bottom bunk because of medical problems.  Pl.'s Dep. 17:12-18:4.  Plaintiff was then taken to a holding cell.  Pl.'s Dep. 18:21-25.

After 15-20 minutes, Defendant Sizelove approached Plaintiff for the first time.  Pl.'s Dep. 19:2-5.  Defendant Sizelove and Plaintiff spoke about the housing situation, and Plaintiff told Sizelove that he had signed the compatibility chrono, and that it was Inmate Inge who was refusing the cell assignment.  Pl.'s Dep. 19:6-16.  Defendant Sizelove then left.  Pl.'s Dep. 19:23. This was the only contact Plaintiff had with Defendant Sizelove.  Pl.'s Dep. 38:15-16. Defendant Sizelove did not review Plaintiff's Central File on July 4, 2009, for housing compatibility.  Defs.' Mot., Ex. C.  He did review his Central File on the following day, July 5, 2009, for purposes of drafting a Rules Violation Report against Plaintiff for refusing a cell mate. Defs.' Mot., Ex. C; Pl.'s Dep. 47:3-12.

Shortly thereafter, Plaintiff was housed in a proposed cell with Inmate Apadaca.  Plaintiff signed a compatibility chrono to house with Inmate Apadaca.  Pl.'s Dep. 19:25-20:21.  Plaintiff asked Inmate Apadaca for the bottom bunk, but he refused.  Inmate Apadaca told Plaintiff that he

would not give up the bottom bunk and that Plaintiff would probably be moved in a few days. Pl.'s Dep. 21:9-25.

One to three days later, Plaintiff saw Defendant Heinzler at morning chow. He told Defendant Heinzler that he needed to be moved to a bottom bunk. Pl.'s Dep. 25:16. Defendant Heinzler asked Plaintiff if he had a lower bunk chrono, and Plaintiff told him that he did, but that he didn't have his property upon his arrival in Administrative Segregation. Pl.'s Dep. 25:18-25. Defendant Heinzler then told Plaintiff to submit a Health Care Request Form to get his chrono, and that he would personally look into the matter. Pl.'s Dep. 27:16-17. Plaintiff completed a Health Care Request Form later that evening and gave it to the psych tech/nurse. Pl.'s Dep. 27:21-24; Compl. 6.

On July 14, 2009, shortly after falling asleep on the top bunk, Plaintiff alleges that he had a seizure and fell from the top bunk. Pl.'s Dep. 30:20-31:25; Compl. 7. He does not remember anything from the episode until he woke up on a stretcher. Pl.'s Dep. 31:6-15. Plaintiff's head hurt like a migraine for a few hours and he had a big lump on his head for about a day. His right shoulder was also bruised for a day or two. Pl.'s Dep. 34:18-35:21. He had no other injuries from the fall and all tests performed at the hospital were negative. Pl.'s Dep. 36:4-5, 47:19-22.

On July 19, 2009, Plaintiff submitted an administrative grievance related to the incident. He states that after he spoke with Defendant Sizelove, Sizelove left and he was housed in cell 12 without incident.

### III. DISCUSSION

#### A. Eighth Amendment Claim

The Eighth Amendment's prohibition against cruel and unusual punishment protects prisoners not only from inhumane methods of punishment but also from inhumane conditions of confinement. Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006) (citing Farmer v. Brennan, 511 U.S. 825, 847 (1994) and Rhodes v. Chapman, 452 U.S. 337, 347 (1981))

(quotation marks omitted).  While conditions of confinement may be, and often are, restrictive and harsh, they must not involve the wanton and unnecessary infliction of pain.  Morgan, 465 F.3d at 1045 (citing Rhodes, 452 U.S. at 347) (quotation marks omitted).  Thus, conditions which are devoid of legitimate penological purpose or contrary to evolving standards of decency that mark the progress of a maturing society violate the Eighth Amendment.  Morgan, 465 F.3d at 1045 (quotation marks and citations omitted); Hope v. Pelzer, 536 U.S. 730, 737 (2002); Rhodes, 452 U.S. at 346.

Prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety, Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000) (quotation marks and citations omitted), but not every injury that a prisoner sustains while in prison represents a constitutional violation, Morgan, 465 F.3d at 1045 (quotation marks omitted).  To maintain an Eighth Amendment claim, a prisoner must show that prison officials were deliberately indifferent to a substantial risk of harm to his health or safety, i.e., that prison officials knew of and disregarded a substantial risk of serious harm to the plaintiff.  E.g., Farmer, 511 U.S. at 847; Thomas v. Ponder, 611 F.3d 1144, 1150-51 (9th Cir. 2010); Foster v. Runnels, 554 F.3d 807, 812-14 (9th Cir. 2009); Morgan, 465 F.3d at 1045; Johnson, 217 F.3d at 731; Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998).

    B.    Analysis

        1.    *Defendant Sizelove*

The sole issue is whether Defendant Sizelove knew of and disregarded Plaintiff's need for a lower bunk.[3]

It is undisputed that Plaintiff's interaction with Defendant Sizelove was limited.  The parties agree that Plaintiff first saw Defendant Sizelove 15 to 20 minutes after he was taken to a holding cage, and after his interaction with Inmate Inge.  There is no dispute that Defendant

---

[3] Defendants admit, and the Court agrees, that the risk of fall from an upper bunk during a seizure is a serious risk of harm to Plaintiff's safety.

Sizelove and Plaintiff spoke about the housing situation, and that Plaintiff told Sizelove that he had signed the compatibility chrono, and that it was Inmate Inge who was refusing the cell assignment. There is no dispute that Defendant Sizelove left a short time later and had no further involvement.

Defendants argue that it was Inmate Acapada who refused to allow Plaintiff to sleep on the bottom bunk, and that the undisputed facts demonstrate that Defendant Sizelove had nothing to do with Plaintiff's ultimate placement with Inmate Acapada. While this may be true, it does not end the analysis. The Court must determine if a genuine dispute of material fact exists as to whether Defendant Sizelove *knew of and disregarded* the risk to Plaintiff if placed on the top bunk.

Although Plaintiff attempts to create a dispute of fact on the issue, he cannot. First, much of Plaintiff's "evidence" is simply speculation on his part. For example, at his deposition, he testified that he didn't know whether Defendant Sizelove had anything to do with his ultimate housing with Inmate Acapada. Plaintiff states, "He took control of the housing situation so I would assume that he did." Pl.s' Dep. 38:21-39:3. Plaintiff's opposition also makes unsupported, generalized statements about Defendant Sizelove's involvement with inmate housing, but such statements are not admissible evidence. Plaintiff's speculative, unsupported testimony cannot defeat summary judgment.

Plaintiff attempts to impute knowledge directly to Defendant Sizelove by arguing that he must have known about Plaintiff's need for a lower bunk because Defendant Sizelove reviewed Plaintiff's Central File. Plaintiff is correct that Defendant Sizelove reviewed his Central File, but he did so the day *after* the housing assignment and for purposes of drafting Plaintiff's Rules Violation Report. Defendant Sizelove did not review Plaintiff's Central File for housing

compatibility on July 4, 2009, and Plaintiff's contentions to the contrary are based solely on unsupported conjecture and argument.[4]

Plaintiff also states in his declaration that he told Officer Large that he refused to be housed on a top bunk, and that Officer Large immediately called Defendant Sizelove "and told Sgt. Sizelove what I had said." ECF. No. 89, at 33. Plaintiff further states that two unknown officers came and told him that he had been assigned to cell 12 by Defendant Sizelove. ECF No. 89, at 33. Defendants object to these statement as inadmissible hearsay, and they are correct. Defendants' objections are sustained. Plaintiff's statements are inadmissible hearsay and cannot be used to create a dispute of fact. Fed. R. Civ. Proc. 56(c); Stillwell v. RadioShack Corp., 676 F.Supp.2d 962, 979 (S.D. Cal. 2009) (hearsay statements do not meet plaintiff's burden of producing admissible evidence that creates a dispute of material fact).[5]

Moreover, for the first time in his declaration in support of his opposition to summary judgment, Plaintiff states that he "told Sgt. Sizelove that [he has] a low bunk chrono." ECF No. 89, at 33. Plaintiff did not testify to this during his deposition, nor was this allegation in his complaint or the inmate appeal attached to his complaint.

Nonetheless, even assuming that this is sufficient to establish that Defendant Sizelove knew of a risk of harm, there is no evidence that he *disregarded* that risk. As explained above, Defendant Sizelove did not review Plaintiff's Central File for housing compatibility prior to his placement with Inmate Acapada. Moreover, it is undisputed that it was Inmate Acapada who ultimately denied Plaintiff the bottom bunk. In fact, as explained above, Plaintiff testified that he

---

[4] In his response to Defendants' undisputed facts, Plaintiff states that he admits Defendants' Undisputed Material Fact Number 7, which states, in part, that Defendant Sizelove did not review Plaintiff's Central File for housing compatibility purposes on July 4, 2009. In his arguments in opposition to summary judgment, he contends that Defendant Sizelove was in charge of housing decisions and pursuant to policy, would have had to review both inmates' Central Files to determine compatibility.

[5] In his opposition, Plaintiff state that Officer A. Large will be called to testify at trial. This does not solve the current hearsay issue, however. If Plaintiff intended to rely on testimony from Officer Large, he should have produced it *now*, in opposing summary judgment.

8

did not know whether Defendant Sizelove was involved in that housing assignment. Finally, there is no evidence that when Defendant Sizelove did review Plaintiff's Central File, he was aware that Inmate Acadapa had refused to allow Plaintiff to have the lower bunk.

Plaintiff has failed to provide reliable, admissible evidence to create a dispute of fact as to whether Defendant Sizelove knew of, and disregarded, a substantial risk of harm. The undisputed facts show that he did not, and Defendant Sizelove is entitled to summary judgment.

### 2. *Defendant Heinzler*

As an initial matter, the Court notes that there are numerous inconsistencies in Plaintiff's allegations and testimony related to Defendant Heinzler. For example, Plaintiff testified at his deposition that he could not remember the date he talked to Defendant Heinzler,[6] but that he spoke to him at morning chow. Pl.'s Dep. 24:9-10. However, in his complaint and in his declaration in support of his opposition, Plaintiff states that he talked to him during AM pill call. Compl. 5; ECF No. 89, at 33.

Nonetheless, the parties agree that Plaintiff told Defendant Heinzler that he needed to be moved to a bottom bunk, and that Defendant Heinzler asked Plaintiff if he had a lower bunk chrono. Plaintiff told him that he did, but that he didn't have his property upon his arrival in Administrative Segregation. Defendant Heinzler then told Plaintiff to submit a Health Care Request Form to get his chrono, which Plaintiff did that evening.

From these undisputed facts, Defendant Heinzler argues that he did not act with deliberate indifference because he could not pull an inmate's medical file to review it for a Chrono, and that this information must be obtained from medical. Instead, Heinzler assisted Plaintiff in obtaining the documents to obtain a new housing assignment.

---

[6] In his complaint, Plaintiff states that he talked to Defendant Heinzler on July 9th. Compl. 6. During his deposition, he states that he spoke to him on July 5th or 6th, or "maybe one or two, maybe three days later." Pl.'s Dep. 24:5-15. In his declaration in support of his opposition, he states that he spoke with Heinzler on July 5, 2009. ECF No. 89, at 33.

9

The Court agrees.  A prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of harm and disregards that risk by failing to take reasonable measures to abate it.  Farmer, 511 U.S. at 837-45.  Prison officials may avoid liability by presenting evidence that they lacked knowledge of the risk, or by presenting evidence of a reasonable, albeit unsuccessful, response to the risk.  Id. at 844-45.  Mere negligence on the part of the prison official is not sufficient to establish liability, but rather, the official's conduct must have been wanton.  Farmer, 511 U.S. at 835; Frost, 152 F.3d at 1128.

Here, even assuming that Plaintiff told Defendant Heinzler that he needed a low bunk because of a seizure disorder, the undisputed facts show that he did not act with the requisite intent.  It is undisputed that Defendant Heinzler first asked Plaintiff whether he had his chrono, and then told Plaintiff that he needed to submit a Health Care Request Form to obtain it.  Defendant Heinzler concluded the conversation by stating that he would personally look into the matter.  There is simply no admissible evidence that Defendant Heinzler acted with the requisite state of mind.  Deliberate indifference requires "subjective recklessness, which entails more than ordinary lack of due care."  Snow v. McDaniel, 681 F.3d 978, 985 (9th Cir. 2012) (citation and quotation marks omitted); Wilhelm, 680 F.3d at 1122.

Although Plaintiff argues that Defendant Heinzler should have called medical or looked in his Central File, what he *should* have done is not the correct inquiry.  The Court must determine whether his act, or failure to act, was reasonable.  Defendant Heinzler's belief as to what Plaintiff needed to do, although not sufficient in Plaintiff's mind, does not demonstrate that he acted with deliberate indifference.  This is not a case where the defendant, once placed on notice of a serious risk, did nothing in response.  Instead, Defendant Heinzler did what he believed to be the correct course of action.  That he failed to abate the risk does not transform his actions into wanton conduct.

Insofar as Plaintiff attempts to demonstrate ill-intent by Defendant Sizelove, he fails to do so and instead creates inconsistencies in his allegations. During his deposition, Plaintiff testified that he first spoke with Defendant Heinzler one to three days after he was placed in a cell with Inmate Apacada. Pl.'s Dep. 25:7-11. He testified that it was during that conversation that Defendant Heinzler told him to put in a Health Care Request, and he did so that evening. Pl.'s Dep. 27:13-24. Plaintiff's complaint contains this version of events. Compl. 6. However, in his opposition, he states that he told Defendant Heinzler "every single day" that he took his medication that he needed to be moved. Finally, on July 9, 2009, when Defendant Heinzler "got tired of listening to [Plaintiff's] complaints, he told him to put in a Health Care Request Form." ECF No. 89, at 20. The version of events in Plaintiff's opposition only creates inconsistent allegations and does not raise any disputed facts.

Plaintiff has failed to provide reliable, admissible evidence to create a dispute of fact as to whether Defendant Heinzler knew of, and disregarded, a substantial risk of harm. The undisputed facts show that he did not, and Defendant Heinzler is entitled to summary judgment.

## IV.     FINDINGS AND RECOMMENDATIONS

Based on the above, the Court HEREBY RECOMMENDS that Defendants' motion for summary judgment, filed on June 11, 2012, be GRANTED.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within **twenty-one (21) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." A party may file a reply to the objections

within fourteen (14) days of service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **September 5, 2013**                    /s/ Dennis L. Beck
                                                                UNITED STATES MAGISTRATE JUDGE